******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

JAMES A. HARNAGE *v.* RACQUEL
LIGHTNER ET AL.
(AC 37539)

Gruendel, Prescott and Pellegrino, Js.

*Argued October 28, 2015—officially released March 1, 2016*

(Appeal from Superior Court, judicial district of Hartford, Peck, J. [motion to dismiss]; Hon. Constance L. Epstein, judge trial referee [motions to dismiss, for judgment].)

*James A. Harnage*, self-represented, the appellant (plaintiff).

*Michael A. Martone*, assistant attorney general, with whom, on the brief, were *George Jepsen*, attorney general, and *Terrence M. O'Neill*, assistant attorney general, for the appellees (defendants).

*Opinion*

PRESCOTT, J. The plaintiff, James A. Harnage, appeals from the judgment of the trial court, dismissing his civil action in favor of the defendants[1] on the grounds that he failed to properly serve the defendants in their individual capacities and failed to post a recognizance bond as required by General Statutes (Rev. to 2013) § 52-185.[2] On appeal, the plaintiff claims that the court improperly granted the defendants' motion to dismiss because: (1) General Statutes §§ 52-64 (a) and 52-57 (a) permit process to be served upon state employees in their individual capacities by serving the attorney general at the Office of the Attorney General in Hartford; and (2) the recognizance bond requirement, as set forth in General Statutes (Rev. to 2013) §§ 52-185 and 52-186,[3] does not apply to him, or, if it does, such a requirement is unconstitutional because it violates his rights to due process and equal protection of the law under the United States constitution. We are not persuaded by either claim. Nevertheless, because we put an interpretive gloss on §§ 52-185 and 52-186 in order to avoid placing these statutes in constitutional jeopardy, we are compelled to reverse the judgment in part and to remand this case to the trial court to consider whether it should waive the plaintiff's obligation to post a recognizance bond.

The record reveals the following undisputed facts and procedural history. The plaintiff is incarcerated at the MacDougall-Walker Correctional Institution. On February 11, 2014, the trial court found that the plaintiff was indigent and granted him a fee waiver for the entry fee, the filing fee, and the cost of service of process. The plaintiff then initiated this action against the defendants, in their official and individual capacities,[4] alleging that the defendants had violated his constitutional rights because they were deliberately indifferent to his medical needs. The plaintiff claimed, inter alia, that the defendants reused needles when administering insulin medication to inmates with diabetes, as well as refused to provide him with medical treatment for a serious hemorrhoid and an abdominal hernia.

On March 5, 2014, the plaintiff attempted to serve the defendants by leaving a copy of the writ of summons, and complaint with the attorney general or his designee at the Office of the Attorney General. On or about April 15, 2014, the defendants mailed a letter to the plaintiff, requesting that he post a recognizance bond in the amount of $250 within ten days. That same day, the defendants also filed a motion to dismiss the complaint against the defendants in their individual capacities for lack of personal jurisdiction due to insufficient service of process, and against the defendants in their official capacities because the plaintiff had failed to post a recognizance bond.

The plaintiff subsequently filed an objection to the defendants' motion to dismiss. In his objection, the plaintiff argued that he had properly served the defendants in their individual capacities by leaving a copy of the process with the attorney general at the Office of the Attorney General in Hartford. Furthermore, he claimed that the requirement of posting a recognizance bond pursuant to § 52-185 and Practice Book § 8-3 did not apply to him and, even if it did, the amount of the recognizance bond was in the court's discretion and should be limited to the nominal amount of one dollar, which, in essence, is a request for a waiver.

On June 30, 2014, the court granted the defendants' motion to dismiss in part. Specifically, the court granted the motion to dismiss the claims against the defendants in their individual capacities because the plaintiff failed to properly serve the defendants in their individual capacities pursuant to § 52-57 (a). The court also ordered the plaintiff to a post a recognizance bond in the amount of $250 within two weeks or it would dismiss the case in its entirety upon reclaim of the motion. Because the plaintiff could not afford to post the $250 recognizance bond and desired to appeal from the court's decision, on November 10, 2014, he filed a motion for judgment, which the court subsequently granted. This appeal followed.

I

The plaintiff first claims that the court improperly granted the defendants' motion to dismiss for lack of personal jurisdiction the claims brought against them in their individual capacities on the ground that he failed to properly serve the defendants pursuant to § 52-57 (a). The plaintiff argues that in a civil action against state employees in their individual capacities, § 52-64 (a) permits service of process to be made by a proper officer leaving a copy of process with the attorney general at the Office of the Attorney General in Hartford. The plaintiff further argues that § 52-57 (a) does not require him to serve the defendants in hand or at their place of abode because the phrase, "[e]xcept as otherwise provided," contained in § 52-57 (a), is a reference to § 52-64. The defendants respond that it is clearly established that § 52-64 (a) applies only if a state employee has been sued in his official capacity and that § 52-57 (a) applies when a state employee is sued in his individual capacity. We agree with the defendants.

We begin with the standard of review and the relevant legal principles governing the plaintiff's claim. "A motion to dismiss . . . properly attacks the jurisdiction of the court . . . . A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . [O]ur review of the trial court's ultimate legal conclusion and resulting [decision to grant] . . . the motion to dismiss will be de novo.

. . . To the extent that our resolution of an appeal requires us to construe a statute, our review is plenary, as statutory construction is a question of law." (Citation omitted; internal quotation marks omitted.) *Ribeiro* v. *Fasano, Ippolito & Lee, P.C.*, 157 Conn. App. 617, 623–24, 117 A.3d 965 (2015); see *State* v. *Boyd*, 272 Conn. 72, 76, 861 A.2d 1155 (2004) (stating that when interpreting language of statute, standard of review is plenary).

"The principles that govern statutory construction are well established. When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *Southern New England Telephone Co.* v. *Cashman*, 283 Conn. 644, 650–51, 931 A.2d 142 (2007).

We begin, as we must, with the language of the statutes at issue. Section 52-57 (a) provides: "Except as otherwise provided, process in any civil action shall be served by leaving a true and attested copy of it, including the declaration or complaint, with the defendant, or at his usual place of abode, in this state." Section 52-57 (b) through (f) then set forth a number of exceptions to subsection (a). For example, subsection (d) provides in relevant part: "In actions against a partnership, service of process may be made by personally serving any process within the state upon any one of the partners or, if none of the partners are residents of the state, service may be made upon the Secretary of the State . . . ." General Statutes § 52-57 (d).

Additionally, § 52-64 (a) provides: "Service of civil process in any civil action or proceeding maintainable against or in any appeal authorized from the actions of, or service of any foreign attachment or garnishment authorized against, the state or against any institution, board, commission, department or administrative tribunal thereof, or against any officer, servant, agent or employee of the state or of any such institution, board, commission, department or administrative tribunal, as

the case may be, may be made by a proper officer (1) leaving a true and attested copy of the process, including the declaration or complaint, with the Attorney General at the office of the Attorney General in Hartford, or (2) sending a true and attested copy of the process, including the summons and complaint, by certified mail, return receipt requested, to the Attorney General at the office of the Attorney General in Hartford."

In construing §§ 52-57 (a) and 52-64 (a), we do not write on a clean slate. Decisions of this court have repeatedly held that a plaintiff, who serves a state defendant pursuant to § 52-64 (a) by leaving a copy of the process with the attorney general at the Office of the Attorney General, has properly served the defendant only in his or her official capacity and has failed to properly serve the defendant in his or her individual capacity. See *Traylor* v. *Gerratana*, 148 Conn. App. 605, 612–13, 88 A.3d 552 (holding that plaintiff's claims against defendants in their individual capacities were barred by lack of personal jurisdiction on basis of improper service of process because plaintiff only served process on attorney general and not at defendants' places of abode as required by § 52-57 [a]), cert. denied, 312 Conn. 901, 91 A.3d 908, cert. denied, 312 Conn. 902, 112 A.3d 778, cert. denied,     U.S.    , 135 S. Ct. 444, 190 L. Ed. 2d 336 (2014); *Edelman* v. *Page*, 123 Conn. App. 233, 243–44, 1 A.3d 1188 ("[T]he court properly dismissed the action against the state defendants due to insufficient service. . . . [T]hey were being sued in their individual capacities, which required that they be served at their usual place of abode. The plaintiff acknowledged that service was made on the secretary at the office of the attorney general [only] . . . ." [Citations omitted.]), cert. denied, 299 Conn. 908, 10 A.3d 525 (2010); *Reitzer* v. *Board of Trustees of State Colleges*, 2 Conn. App. 196, 203–204, 477 A.2d 129 (1984) (holding that service on defendants through Office of Attorney General was proper because defendants were sued in their official capacities but relief sought can only be granted against them in their official capacity and not in their individual capacity).

The United States Court of Appeals for the Second Circuit has similarly declined to interpret § 52-64 (a) as authorizing service on a state employee in his or her individual capacity by leaving a copy of the process with the attorney general at the Office of the Attorney General. See *Bogle-Assegai* v. *Connecticut*, 470 F.3d 498, 507 (2d Cir. 2006), cert. denied, 552 U.S. 1165, 128 S. Ct. 1121, 169 L. Ed. 2d 949 (2008). In reaching that conclusion, the Second Circuit relied in particular on the following language of § 52-64 (a): "against . . . the state or . . . any officer, servant, agent or employee of the state . . . *as such* . . . ." (Emphasis added; internal quotation marks omitted.) Id. The court reasoned that if a defendant is a state employee, but is not sued "as such," in other words, if he is sued in his

individual capacity, service of process must be made pursuant to § 52-57 (a), which requires that service be made by leaving the summons and complaint with the defendant or at his usual place of abode. Id. In light of the language of the statutes and these authorities, in order for the plaintiff to have properly served the defendants in their individual capacities, he was required to serve process in the manner required by § 52-57 (a).

The plaintiff argues that if § 52-57 (a) is applicable, the legislature's use of the phrase, "[e]xcept as otherwise provided," demonstrates an intent that § 52-64 (a) applies in the event that a state employee is sued in his or her individual capacity. The language of the statute, however, does not allow for such an interpretation because § 52-64 (a) does not "otherwise provide" for service of process on a state employee in his or her individual capacity by serving process on the attorney general at the Office of the Attorney General. Furthermore, § 52-57 specifically enumerates exceptions to subsection (a), none of which provide that it is permissible to serve process in cases against state employees in their individual capacities by leaving a copy of the process with the attorney general at the Office of the Attorney General. Thus, the legislature's use of the phrase, "[e]xcept as otherwise provided," does not advance the plaintiff's claim because he has failed to identify any applicable statutory exception to § 52-57 (a).

In sum, in order for the plaintiff to properly serve process on the defendants in their individual capacities, the plaintiff was required to "[leave] a true and attested copy of [process], including the declaration or complaint, with the defendant, or at his usual place of abode . . . ." General Statutes § 52-57 (a). Because the plaintiff failed to comply with § 52-57 (a) and only attempted to serve process upon the defendants by leaving a copy of process at the Office of the Attorney General, such service was insufficient to obtain personal jurisdiction over the defendants in their individual capacities. Accordingly, we conclude that the court properly dismissed for lack of personal jurisdiction the claims brought against the defendants in their individual capacities because the defendants were not properly served pursuant to § 52-57 (a).

II

The plaintiff next claims that the court improperly granted the defendants' motion to dismiss the claims brought against them in their official capacities on the ground that the plaintiff failed to post a recognizance bond pursuant to § 52-185.[5] Specifically, the plaintiff argues that the recognizance bond requirement does not apply to him, or if it does, it is unconstitutional because it deprives him of his rights to due process and equal protection of the law under the federal constitution. We conclude that the recognizance bond require-

ment does apply to the plaintiff. We, however, conclude that it is necessary to place an interpretive gloss on §§ 52-185 and 52-186 in order to avoid placing them in constitutional jeopardy. Accordingly, we construe these provisions as authorizing the court to waive the plaintiff's obligation to post, or to reduce significantly the amount of, a recognizance bond in light of a party's indigency and status as an inmate.

A

The plaintiff first argues that the recognizance bond requirement, as set forth in §§ 52-185 and 52-186, does not apply to him because a recognizance bond is required only if costs can be taxed against him if the state prevails. The plaintiff argues that costs cannot be taxed against him because a 1931 decision of our Supreme Court stated that if costs are not taxable against one party, then that party may not seek costs in its favor. See *Bissing* v. *Turkington*, 113 Conn. 737, 740, 157 A. 226 (1931) ("[i]f [costs] are not taxable against the respondent they are not taxable in his favor against the applicant"). Thus, according to the plaintiff's argument, because the state's sovereign immunity prevents the imposition of costs against it, costs may not be taxed against him.[6] We are not persuaded.

Whether the recognizance bond requirement, as set forth in §§ 52-185 and 52-186, applies to the plaintiff in this case is a question of statutory interpretation, and, therefore, our review is plenary. See *Atlantic Mortgage & Investment Corp.* v. *Stephenson*, 86 Conn. App. 126, 131–32, 860 A.2d 751 (2004) ("The question of whether a particular statute . . . applies to a given state of facts is a question of statutory interpretation . . . . Statutory interpretation presents a question of law for the court. . . . Our review is, therefore, plenary." [Internal quotation marks omitted.]); *Ribeiro* v. *Fasano, Ippolito & Lee, P.C.*, supra, 157 Conn. App. 623–24 (in reviewing trial court ruling on motion to dismiss, if required to construe statute, appellate review is plenary because it is question of law); see also part I of this opinion (discussing standard of review for statutory construction issues and legal principles guiding our analysis).

We begin with the language of the provisions at issue. General Statutes (Rev. to 2013) § 52-185 provides in relevant part: "(a) If the plaintiff in any civil action . . . does not appear to the authority signing the process that the plaintiff is able to pay the costs of the action should judgment be rendered against him, the plaintiff shall enter into a recognizance to the adverse party with a financially responsible inhabitant of this state as surety, or a financially responsible inhabitant of this state shall enter into a recognizance to the adverse party, that the plaintiff shall prosecute his action to effect and answer all costs for which judgment is rendered against him. . . ."

General Statutes (Rev. to 2013) § 52-186 (a) provides in relevant part: "The court, upon motion of the defendant or on its own motion, may order a sufficient bond to be given by the plaintiff before trial . . . . In determining the sufficiency of the bond to be given, the court shall consider only the taxable costs which the plaintiff may be responsible for under section 52-257 . . . ."

It is well settled that these statutes only apply in civil cases in which costs are taxable against the plaintiff. See *Bissing* v. *Turkington*, supra, 113 Conn. 739 ("[recognizance bond requirement] must be construed to apply only to process in actions in which costs are taxable, since there would be no reason for securing the payment of costs in an action in which costs could not in any event be recovered"). "Costs are a matter of statutory regulation, and are not taxable unless given by statute." Id.

General Statutes § 52-257 (a) permits costs to be taxed in favor of the prevailing party in civil actions "in which the matter in demand is not less than fifteen thousand dollars . . . ."[7] Section 52-257 clearly and unambiguously provides for costs to be taxable in favor of the prevailing party in civil actions, making no explicit exceptions for inmates or indigent parties: "The prevailing party in any such civil action *shall* receive . . . ."[8] (Emphasis added.) General Statutes § 52-257 (a).

The plaintiff's assertion that these provisions do not apply to him is based on the following syllogism. In *Bissing* v. *Turkington*, supra, 113 Conn. 740, our Supreme Court stated: "If [costs] are not taxable against the respondent they are not taxable in [the respondent's] favor against the applicant." The plaintiff then argues that costs are not taxable against the state because the legislature did not waive the state's sovereign immunity when it enacted § 52-257. See *State* v. *Chapman*, 176 Conn. 362, 364–66, 407 A.2d 987 (1978). Because the state's sovereign immunity prevents the taxation of costs against the state in this action, the defendant asserts that the language in *Bissing* prevents costs from being taxed against him. Accordingly, he argues that a recognizance bond is not required in this case.[9]

We disagree because the plaintiff takes the language used by our Supreme Court in *Bissing* out of context. *Bissing* was a habeas corpus proceeding. Although habeas corpus proceedings are technically civil actions; see *Smith* v. *Bennett*, 365 U.S. 708, 712, 81 S. Ct. 895, 6 L. Ed. 2d 39 (1961) ("habeas corpus may, of course, be found to be a civil action for procedural purposes"); they do not fall within the parameters of § 52-257, which expressly limits its applicability to civil cases that seek monetary relief. See General Statutes § 52-257. Mone-

tary relief is not available in habeas proceedings. See *Sanchez* v. *Warden*, 214 Conn. 23, 34, 570 A.2d 673 (1990) (stating that standard relief in habeas corpus action is discharge of prisoner, while standard relief in § 1983 action may include compensatory and punitive damages, injunctive relief, and attorney's fees). *Bissing* held that because there was no statute permitting costs to be taxable in favor of the prevailing party in a habeas corpus action, "there would seem to be no justification for the taxation of costs in such proceeding, and therefore no need for a recognizance for costs." *Bissing* v. *Turkington*, supra, 113 Conn. 740.

The present case, unlike a habeas proceeding, falls into a category of cases in which the legislature has specifically authorized the taxation of costs because it is a civil action "in which the matter in demand is not less than fifteen thousand dollars . . . ." General Statutes § 52-257 (a). Thus, § 52-257 applies to the plaintiff and, should the state prevail in this action, he would be liable to the state to pay the state's taxable costs. Accordingly, we conclude that the court properly determined that the recognizance bond requirement applied to the plaintiff.

B

The plaintiff argues, in the alternative, that the court improperly granted the defendants' motion to dismiss the official capacity claims on the ground that such a recognizance bond requirement is unconstitutional, as applied to him, an indigent inmate, because it denies him his fundamental right of access to the courts, particularly his right to challenge the conditions of his confinement. Thus, the plaintiff contends that, as applied to him, the statutes requiring a recognizance bond deny him due process and equal protection of the law under the United States constitution.

Although recognizing that the plaintiff has raised a constitutional challenge, the defendants simply respond that all statutes are presumed to be constitutional. The defendants also argue that the plaintiff's access to the courts is not unlawfully restricted because of his indigent status, in light of the fact that § 52-185 permits a plaintiff to avoid actually posting the recognizance bond by having a "financially responsible inhabitant of this state . . . enter into a recognizance to the adverse party . . . ." General Statutes (Rev. to 2013) § 52-185 (a). The defendants, however, do not otherwise address whether the statute infringes upon the plaintiff's right of access to the courts in light of the fact that he is indigent and incarcerated.

"[I]n evaluating the [plaintiff's] challenge to the constitutionality of [a] statute . . . [w]e will indulge in every presumption in favor of the statute's constitutionality . . . ." (Internal quotation marks omitted.) *State* v. *Indrisano*, 228 Conn. 795, 805, 640 A.2d 986 (1994).

"It . . . is well established that a validly enacted statute carries with it a strong presumption of constitutionality, [and that] those who challenge its constitutionality must sustain the heavy burden of proving its unconstitutionality beyond a reasonable doubt. . . . Therefore, [w]hen a question of constitutionality is raised, courts must approach it with caution, examine it with care, and sustain the legislation unless its invalidity is clear." (Internal quotation marks omitted.) *Doe* v. *Hartford Roman Catholic Diocesan Corp.*, 317 Conn. 357, 405, 119 A.3d 462 (2015). "[W]e may also add interpretive gloss to a challenged statute in order to render it constitutional. In construing a statute, the court must search for an effective and constitutional construction that reasonably accords with the legislature's underlying intent." (Internal quotation marks omitted.) *State* v. *Indrisano*, supra, 805–806.

With these principles in mind, we turn to the specifics of this case. The plaintiff raises valid constitutional concerns regarding the recognizance bond requirement as applied to him, an indigent inmate. Prisoners have a fundamental right of access to the courts, including the right to challenge the conditions of their confinement. See *Wolff* v. *McDonnell*, 418 U.S. 539, 579, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974). It is well established that prisoners have a fundamental constitutional right of access to the courts, and that such access must be "adequate, effective and meaningful. . . . Decisions of the United States Supreme Court have consistently required [s]tates to shoulder affirmative obligations to assure all prisoners meaningful access to the courts. It is indisputable that indigent inmates must be provided at state expense with paper and pen to draft legal documents, with notarial services to authenticate them, and with stamps to mail them. States must forgo collection of docket fees otherwise payable to the treasury and expend funds for transcripts. State expenditures are necessary to pay lawyers for indigent [criminal] defendants at trial . . . and in appeals as of right . . . ." (Citations omitted; internal quotation marks omitted.) *Washington* v. *Meachum*, 238 Conn. 692, 735, 680 A.2d 262 (1996). Prisoners possess a right of access not only to pursue appeals from criminal convictions or to bring a habeas action, but also to assert civil rights actions to vindicate their basic constitutional rights, including challenging the conditions of their confinement under the eighth amendment to the federal constitution. *Wolff* v. *McDonnell*, supra, 579 ("[i]t is futile to contend that the Civil Rights Act of 1871 has less importance in our constitutional scheme than does the Great Writ").

In civil cases in which a fundamental right is implicated and judicial recourse is the sole manner of resolving the dispute, there cannot be a total deprivation of access to the courts, and a statute conditioning access to the courts on paying court fees or costs raises significant constitutional concerns. See *Boddie* v. *Connecti-*

*cut*, 401 U.S. 371, 382–83, 91 S. Ct. 780, 28 L. Ed. 2d 113 (1971) (holding that statute requiring indigent plaintiffs to pay filing fee to obtain divorce violated due process because marriage is fundamental interest and plaintiff can only obtain divorce through judicial system); see also *M.L.B.* v. *S.L.J.*, 519 U.S. 102, 123–24, 117 S. Ct. 555, 136 L. Ed. 2d 473 (1996) (holding that statute conditioning civil litigants' right to appeal a termination of parental rights on prepayment of costs was unconstitutional as violation of due process and equal protection because it implicated fundamental interest and resort to court was sole path for relief); cf. *Sosna* v. *Iowa*, 419 U.S. 393, 410, 95 S. Ct. 553, 42 L. Ed. 2d 532 (1975) (limiting *Boddie* to circumstances where there is total deprivation of access to the courts to obtain divorce and holding that access to courts was not denied by delaying access to divorce); *United States* v. *Kras*, 409 U.S. 434, 445–46, 93 S. Ct. 631, 34 L. Ed. 2d 626 (1973) (upholding statute requiring payment of court fees as condition precedent to discharge in bankruptcy because no fundamental interest is at stake and resort to courts is not sole path to securing debt forgiveness).

In the present case, in considering the recognizance bond statutes and assessing their constitutionality, we are mindful of these constitutional principles. Sections 52-185 and 52-186 contain no express exception to the recognizance bond requirement for indigent inmates. Furthermore, the recognizance bond requirement is not one of the enumerated fees or costs that can be waived pursuant to General Statutes § 52-259b if a plaintiff is found to be indigent and unable to pay.[10] In light of the lack of express authority to waive the recognizance bond requirement, a handful of our Superior Courts have held that indigent inmates must comply with the recognizance bond requirement, regardless of their inability to pay. See *Steinkamp* v. *Jacque*, 36 Conn. Supp. 37, 38, 410 A.2d 489 (1979) (holding that waiver of bond for prosecution for indigent defendant is not permitted); *Fellows* v. *Williams*, Superior Court, judicial district of Hartford, Docket No. CV-00-0800686-S, 2000 WL 1655273 (September 27, 2000) (*Rittenband, J.*) (no waiver of bond for prosecution for inmate).

These Superior Court decisions, upon which the defendants rely, have not analyzed whether the recognizance bond requirement as applied to indigent inmates runs afoul of an inmate's fundamental right of access to the courts to challenge the conditions of his or her confinement. The defendants are correct that § 52-185 authorizes a plaintiff to find another financially responsible person to enter into a recognizance on his behalf, thereby permitting an indigent plaintiff to avoid having to pay the recognizance bond out of his own pocket. This option does not alleviate our constitutional concerns altogether when the indigent plaintiff is incarcerated. An indigent inmate, who has no financial ability to pay the recognizance bond and lacks access to the

greater world, may not be able to find a "financially responsible inhabitant of this state"; General Statutes (Rev. to 2013) § 52-185 (a); to turn to for help, and, thus, would be cut off from accessing the courts to bring any civil actions that fall within the parameters of the recognizance bond requirement.[11]

In order to alleviate the constitutional concerns that the plaintiff has brought to our attention, we place an interpretive gloss on §§ 52-185 and 52-186. See *State* v. *Indrisano*, supra, 228 Conn. 805 (placing interpretive gloss on disorderly conduct statute to eliminate constitutional infirmity). In crafting an effective interpretive gloss that does not conflict with the legislature's underlying intent, it is instructive to consider decisions of the federal circuit courts assessing the constitutionality of the fee provision of the Prison Litigation Reform Act (PLRA); 28 U.S.C. § 1915;[12] which conditions prisoners' access to the courts on the prepayment of filing fees.

In upholding the constitutionality of the fee provision, the federal circuit courts have relied heavily on the fact that the PLRA contains a safety valve provision; 28 U.S.C. § 1915 (b) (4); which ensures that indigent inmates, who have no means by which to pay the initial filing fee, are not barred from bringing their civil actions. See, e.g., *Murray* v. *Dosal*, 150 F.3d 814, 818 (8th Cir. 1998) ("[g]iven . . . that the PLRA provides no prisoner shall be prohibited from bringing an action 'for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee,' we agree that the provisions pass constitutional muster"), cert. denied, 526 U.S. 1070, 119 S. Ct. 1467, 143 L. Ed. 2d 551 (1999); *Tucker* v. *Branker*, 142 F.3d 1294, 1297–99 (D.C. Cir. 1998) (discussing that PLRA has safety valve to ensure access to courts for fully indigent prisoners); *Hampton* v. *Hobbs*, 106 F.3d 1281, 1284 (6th Cir. 1997) (upholding § 1915 because it does not deprive inmates their right of access to courts because of safety valve provision); see also *Taylor* v. *Delatoore*, 281 F.3d 844, 848–49 (9th Cir. 2002) (same).

In placing an interpretive gloss on §§ 52-185 and 52-186, we note the need for a safety valve that would allow an indigent inmate, who cannot afford the recognizance bond and who has no ability to procure a "financially responsible inhabitant of this state"; General Statutes (Rev. to 2013) § 52-185 (a); willing to enter into one on his or her behalf, to access the courts. In order to create such a safety valve, we place a gloss on §§ 52-185 and 52-186 authorizing a trial court to exercise its discretion to waive the recognizance bond requirement outright or to significantly reduce the amount of the bond upon a proper showing of the inmate's indigency and an inability to find another financially responsible person willing to enter into a recognizance bond on his or her behalf. Truly indigent inmates, at the hearing on the motion to dismiss for lack of a recognizance bond, can

request a waiver of the bond requirement or request that a nominal amount be imposed.[13] Thus, an indigent inmate's path to the courts is not blocked, and his or her fundamental right of access to the courts is not implicated, alleviating our constitutional concerns.

Additionally, such a gloss ameliorates any potential constitutional infirmities because our judicially fashioned safety valve prevents there from being a total deprivation of access to the courts. In *Sosna* v. *Iowa*, supra, 419 U.S. 410, the United States Supreme Court upheld a one year residency requirement before permitting state residents to obtain a divorce, reasoning that although litigants have a right of meaningful access to the courts to obtain a divorce, this right may be burdened as long as there is not a "total deprivation" of access. Using similar reasoning, the United States Court of Appeals for the Tenth Circuit upheld the constitutionality of a statute, as applied to an inmate, sanctioning litigants for frivolous or malicious lawsuits because a prisoner's constitutional right of access to the courts can be limited as long as there is not a "total deprivation" of access to the courts. *Green* v. *Price*, Docket Nos. 95-1079, 95-1080, 1996 WL 56075 (10th Cir. February 9, 1996) (decision without published opinion, 76 F.3d 392 [10th Cir. 1996]). Similarly, with the interpretive gloss that we place on §§ 52-185 and 52-186, the recognizance bond requirement does not totally deprive indigent inmates of access to the courts to challenge the conditions of their confinement; rather, they can still bring their lawsuits upon a proper showing of indigency at the hearing on the motion to dismiss or at a requested hearing on the appropriate amount of bond.

Furthermore, such an interpretive gloss does no violence to §§ 52-185 and 52-186. These statutes are silent as to whether they authorize a trial court to waive the recognizance bond requirement, and certainly they include no express language that prevents a trial court from doing so. Although they do provide that a trial court may order a "sufficient" bond amount after considering the potential taxable costs pursuant to § 52-257; General Statutes (Rev. to 2013) § 52-186; arguably implying that an outright waiver of the recognizance bond is not permitted, our interpretive gloss is necessary to avoid constitutional jeopardy.[14]

Not only does our interpretive gloss do no violence to §§ 52-185 and 52-186, it is also in accord with the current revision of § 52-185.[15] See General Statutes (Rev. to 2015) § 52-185, as amended by Public Acts 2015, No. 15-85, § 14. According to the Office of Legislative Research, the amendments to § 52-185 "[replace] certain provisions requiring a [recognizance] bond . . . with new provisions prohibiting them, unless a court finds good cause . . . ."[16] Office of Legislative Research, Connecticut General Assembly, Bill Analysis, Senate Bill No. 1033. In amending § 52-185 and in repeal-

ing § 52-186, the legislature has significantly narrowed the number of civil cases in which a recognizance bond is required and has provided the trial court with greater discretion in determining whether a recognizance bond is necessary. Thus, as amended, § 52-185 lends support to the interpretive gloss that we place on General Statutes (Rev. to 2013) §§ 52-185 and 52-186.

Further, although the plaintiff does have a fundamental right of access to the courts to challenge the conditions of his confinement and to vindicate deprivations of his civil rights, with the gloss that we place on §§ 52-185 and 52-186 permitting waiver of the recognizance bond, we determine that the possibility for deprivation of that right has been ameliorated. Because the recognizance bond requirement with our interpretive gloss does not impinge on a fundamental right, we conclude that these statutes pass constitutional muster under due process and equal protection review.[17]

Having added this interpretive gloss to §§ 52-185 and 52-186, which the trial court did not consider, we find it necessary to remand the case to the trial court for a hearing to consider the plaintiff's request, made before the trial court, for a waiver.

The judgment is reversed only as to the dismissal of the plaintiff's causes of action against the defendants in their in official capacities and the case is remanded for a hearing consistent with this opinion to consider the plaintiff's request for a waiver of his obligation to post a recognizance bond. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] According to the plaintiff's complaint, the defendants are nine state employees. Eight of the nine defendants were employed by the University of Connecticut Correctional Managed Healthcare Program and provided medical services to inmates at the MacDougall-Walker Correctional Institution: Racquel Lightner, Dr. Pillai, Dr. O'Hallaran, CN Vecchairelli, Dr. Naqui, PA Rob, LPN Francis, and Lisa Caldonero. The remaining defendant, Lieutenant Williams, was employed by the Department of Correction and was a lieutenant at the MacDougall-Walker Correctional Institution.

[2] We note that since the commencement of this action, § 52-185 has been amended, effective October 1, 2015. See Public Acts 2015, No. 15-85, § 14. Because the current revision of the statute is substantively different from its previous revision and was not in effect at the time that the trial court decided the motion to dismiss, our analysis pertains to the revision of the statute in effect at that time. Thus, all references to § 52-185 are to the revision that was in effect at that time, unless otherwise indicated.

[3] We note that § 52-186, although in effect at the time of the motion to dismiss, has since been repealed, effective October 1, 2015. See Public Acts 2015, No. 15-85, § 27. Because the statute was in effect at the time that the motion to dismiss was decided, it is part of our analysis.

There are a number of provisions of our rules of practice that implement §§ 52-185 and 52-186. See Practice Book §§ 8-3 through 8-12. Although the plaintiff mentions Practice Book § 8-4, he does not separately analyze any of the relevant provisions of the rules of practice. Because the recovery of costs and the need for a recognizance bond to secure those costs are primarily legislative matters; see *Bissing* v. *Turkington*, 113 Conn. 737, 739, 157 A. 226 (1931) (taxation of costs is matter of statutory regulation and recognizance bond required only if costs are taxable); our analysis focuses on the meaning and import of the statutes.

[4] The plaintiff's complaint specifically indicates that the plaintiff is suing the defendants in their individual capacities but is silent as to whether he

is also suing them in their official capacities. The defendants and the trial court treated the complaint as if the defendants were being sued in both their official capacities and individual capacities.

[5] In his brief, the plaintiff discusses only § 52-185. Section 52-186, however, also is part of the statutory scheme governing recognizance bonds and, thus, a discussion of this statute is necessary to a complete analysis of the plaintiff's argument.

[6] The plaintiff also makes the following public policy argument, contending that the recognizance bond requirement should not apply to him because he is an indigent inmate challenging the conditions of his confinement: "A challenge to an [inmate's] conditions of confinement is not of the category of cases wherein costs may be taxed against the plaintiff. The underlying philosophy being that to do so would be to paralyze, and erect a barrier to an inmate's ability to challenge the very force that restrains them, and denies them an ability to insist on the most civilized treatment . . . ." We construe this contention as an argument in support of the plaintiff's constitutional claim, rather than as part of his statutory construction claim. Moreover, the plaintiff's public policy concerns are mitigated by our construction of §§ 52-185 and 52-186, and, thus, we are not persuaded by them. See part II B of this opinion.

[7] General Statutes § 52-257 provides in relevant part: "(a) The fees of parties in civil actions in which the matter in demand is not less than fifteen thousand dollars . . . . The prevailing party in any such civil action shall receive, by way of indemnity, the following sums: (1) For all proceedings before trial, fifty dollars; (2) for the trial of an issue of law or fact, seventy-five dollars, but if more than one issue of fact is tried at one time, only one trial fee shall be allowed; and (3) in difficult or extraordinary cases in the Superior Court, where a defense has been interposed, a further allowance, in the discretion of the court, not to exceed two hundred dollars.

"(b) Parties shall also receive: (1) For each witness attending court, the witness' legal fee and mileage; (2) for each deposition taken out of the state, forty dollars, and for each deposition within the state, thirty dollars . . . (5) for maps, plans, mechanical drawings and photographs, necessary or convenient in the trial of any action, a reasonable sum; (6) for copies of records used in evidence, bonds, recognizances and subpoenas, court and clerk's fees; (7) for the signing and service of process, the legal fees payable therefor, except that a fee shall not be allowed for the return of a subpoena to court; (8) the actual expense incurred in publishing orders of notice under direction of the court; (9) for each interpreter necessarily employed in the trial of any civil action, twenty dollars per diem; (10) for premiums upon all bonds or undertakings provided pursuant to statute, rule of court, order of court or stipulation of parties, including bonds in lieu of or in release or dissolution of attachment, the actual amount paid, not exceeding a reasonable amount; (11) documented investigative costs and expenses, not exceeding the sum of two hundred dollars; and (12) for the recording, videotaping, transcribing and presentation of the deposition of a practitioner of the healing arts, as defined in section 20-1, dentist, registered nurse, advanced practice registered nurse or licensed practical nurse, as defined in section 20-87a, or real estate appraiser that is used in lieu of live testimony in the civil action, the reasonable expenses incurred. . . ."

[8] Although General Statutes § 52-259b (a) provides for waiver of "fees payable to the court" and/or the cost of service of process if the court finds a party to be indigent and unable to pay, § 52-259b does not waive any other litigation related costs.

[9] Carried to its logical conclusion, the plaintiff's argument would mean that the state is never entitled to the taxation of costs when it prevails in a case because sovereign immunity prevents costs from ever being taxed against it. We discern no language in any of these statutes that would suggest that the legislature intended to deprive the state of its right to receive costs in civil actions in which it prevails. Moreover, the plaintiff has not cited a single case that would support such a remarkable proposition.

[10] General Statutes § 52-259b provides in relevant part: "(a) In any civil or criminal matter, if the court finds that a party is indigent and unable to pay a fee or fees payable to the court or to pay the cost of service of process, the court shall waive such fee or fees and the cost of service of process shall be paid by the state. . . ."

[11] Though not discussed by the defendants, we also note that there is an alternative means by which the plaintiff may access the courts to challenge the conditions of his confinement: he may file a habeas petition challenging the conditions of his confinement, which does not require the posting of a

recognizance bond because costs are not taxable in a habeas proceeding. See *Bissing* v. *Turkington*, supra, 113 Conn. 740. This alternative avenue by which the plaintiff may challenge the conditions of his confinement, however, is not sufficient in and of itself to alleviate our constitutional concerns because the recognizance bond requirement applies to all civil actions in which costs are taxable in favor of the prevailing party pursuant to § 52-257. As stated previously, inmates have a right to bring civil rights actions to vindicate their constitutional rights, which includes, but is not limited to, the right to challenge the conditions of their confinement. See *Wolff* v. *McDonnell*, supra, 418 U.S. 579. Therefore, although there is an alternative path for inmates to access the courts to challenge the conditions of their confinement, that option does not altogether alleviate our constitutional concerns regarding the preconditioning of indigent inmates' access to the courts on the payment of a recognizance bond.

Additionally, a civil action challenging an inmate's conditions of confinement pursuant to 42 U.S.C. § 1983 is distinct from a habeas proceeding that is brought to challenge the conditions of confinement because compensatory and punitive damages are available in a § 1983 civil action, but are not available in a habeas proceeding. See id., 554 ("habeas corpus is not an appropriate or available remedy for damages claims, which . . . could be pressed under § 1983 along with suits challenging the conditions of confinement rather than the fact or length of custody").

[12] Title 28 of the United States Code, § 1915, provides in relevant part: "(a) . . . . (2) A prisoner seeking to bring a civil action or appeal a judgment in a civil action or proceeding without prepayment of fees or security therefor, in addition to filing the affidavit filed under paragraph (1), shall submit a certified copy of the trust fund account statement (or institutional equivalent) for the prisoner for the 6-month period immediately preceding the filing of the complaint or notice of appeal, obtained from the appropriate official of each prison at which the prisoner is or was confined. . . .

"(b) (1) Notwithstanding subsection (a), if a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee. The court shall assess and, when funds exist, collect, as a partial payment of any court fees required by law, an initial partial filing fee of 20 percent of the greater of—

"(A) the average monthly deposits to the prisoner's account; or

"(B) the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint or notice of appeal.

"(2) After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid. . . .

"(4) In no event shall a prisoner be prohibited from bringing a civil action or appealing a civil or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee. . . ."

[13] It is, of course, the indigent inmate's burden to prove that he is indigent and that he cannot afford the amount of bond requested by the defendants. It is also the inmate's burden to request a hearing as to the amount of bond if such a hearing is desired.

[14] Although the allowance in § 52-185 for a plaintiff not to pay the recognizance bond from his own funds and instead to find a "financially responsible inhabitant of this state" to enter into a recognizance on his behalf does not alleviate our constitutional concerns regarding the recognizance bond requirement as applied to indigent inmates, it is a relevant factor to be taken into consideration by a trial court when deciding whether it should waive the recognizance bond or substantially reduce the bond amount.

[15] The current revision of General Statutes (Rev. to 2015) § 52-185, as amended by Public Acts 2015, No. 15-85, § 14, provides in relevant part: "*No bond or recognizance for prosecution is required* from a party in any civil action *unless* the judicial authority, *upon motion and for good cause shown*, finds that a party is not able to pay the costs of the action and orders that the party give a sufficient bond or enter into a recognizance to an adverse party with a financially responsible person to pay taxable costs. In determining the sufficiency of the bond or recognizance, the judicial authority shall consider only the taxable costs which the party may be responsible for under section 52-257 . . . ." (Emphasis added.)

[16] In testifying on behalf of the Judicial Branch in favor of amending § 52-

185, the Honorable Patrick L. Carroll III, the deputy chief court administrator, stated that a recognizance bond "unnecessarily increases the burden on self-represented [plaintiffs] . . . and does not provide any realistic security for costs of an action." Judiciary Committee public hearing, concerning Senate Bill No. 1033 (April 1, 2015), testimony of Judge Carroll.

[17] If no fundamental right is implicated, the challenged legislation is subject to evaluation for substantive due process and equal protection purposes under the rational basis test. *Federal Communications Commission* v. *Beach Communications, Inc.*, 508 U.S. 307, 313, 113 S. Ct. 2096, 124 L. Ed. 2d 211 (1993); *Reno* v. *Flores*, 507 U.S. 292, 305, 113 S. Ct. 1439, 123 L. Ed. 2d 1 (1993). The plaintiff has only briefed his due process and equal protection claims on the basis of a fundamental right being violated. The plaintiff has failed to brief whether the recognizance bond requirement passes the rational basis test, should we find that no fundamental right is at stake. In light of this inadequate briefing, we decline to address this issue. See *Clelford* v. *Bristol*, 150 Conn. App. 229, 233, 90 A.3d 998 (2014).